# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MISTY BAILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CV-0561-CVE-SH** |
| | ) | |
| **TURN KEY HEALTH CLINICS, LLC,** | ) | |
| **SUSAN BLALOCK, L.P.N., and** | ) | |
| **JOSEPHINE OTOO, APRN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions:  Defendant Josephine Otoo's Motion to Dismiss (Dkt. # 10); Defendant Turn Key Health Clinics, LLC's Motion to Dismiss (Dkt. # 12); Defendant Susan Blalock's Motion to Dismiss (Dkt. # 21).  Plaintiff Misty Bailey filed this case alleging that defendants ignored her obvious need for medical care while she was a pretrial detainee at the Ottawa County Jail (the Jail).  Defendants argue that plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983 under a deliberate indifference theory.  The individual defendants, Susan Blalock, L.P.N. and Josephine Otoo, APRN, argue that plaintiff's allegations are conclusory and are insufficient to state a § 1983 claim against them.  Dkt. ## 10, 21.  Turn Key Health Clinics, LLC (Turn Key) asserts that plaintiff's allegations fail to establish a violation of her constitutional rights and, even if the Court finds that plaintiff received constitutionally inadequate medical care, any violation of plaintiff's constitutional rights was not caused by an official custom or policy of Turn Key.  Dkt. # 12.

**I.**

On November 1, 2018, Bailey was held as a pretrial detainee at the Jail, and she alleges that she began to suffer from severe chest pain and an elevated heart rate. Dkt. # 2, at 3-4. Bailey states that she began vomiting and could not keep any food or medication down, and she also began experiencing lower back pain and severe pain when urinating. Id. at 4. Bailey alleges that suffered "unbearable" pain for two days, and a detention officer commented that her cell smelled like "rotted meat." Id. She states that she requested to be taken to the hospital, but Blalock denied her request, even though Blalock was aware of Bailey's symptoms. Id. Bailey alleges that Blalock failed to conduct any type of medical assessment of Bailey. Bailey also claims that Otoo, a nurse practitioner, "was aware of [Bailey's] condition, but, in deliberate indifference to her serious medical needs, refused to send her to the hospital and did not come to the Jail to medically assess her." Id. There are no other allegations concerning the conduct of Blalock or Otoo.

Bailey alleges that, on November 3, 2018, the weekend nurse arrived at the jail, and plaintiff requested to be sent to the hospital. The nurse documented that plaintiff claimed that she had been vomiting for two days, had severe back pain, and that she experienced pain when urinating. Dkt. # 2, at 4. The nurse found that Bailey's blood pressure and heart rate were high, but she did not send Bailey to the hospital. Id. at 4-5. Bailey's condition continued to deteriorate, and she had a fever of 103 degrees and had a seizure. Id. at 5. Detention staff informed Bailey that she would be taken to a hospital, but she had to agree to be released on her own recognizance and assume financial responsibility for her medical care. Id. Bailey was taken to the hospital and diagnosed with a bacterial infection of the urinary tract and kidney. Id. Bailey was treated with an injection of fentanyl due to her severe pain, and she was prescribed antibiotics for the bacterial infection. Id.

Bailey alleges that county sheriffs may be held liable for maintaining a custom or policy of providing inadequate medical care at county jails, and she alleges that the sheriff of Ottawa County, Jeremy Floyd, failed to properly train or supervise detention officers and medical staff as to the medical care of inmates with serious medical needs. Id. at 6. Bailey asserts that Floyd and Turn Key failed to provide access to a physician, and the most senior medical professional at the jail was a part-time nurse practitioner, Otoo, who only saw patients by means of telemedicine. Id. Bailey alleges that an inmate, Terral Ellis, died in October 2015 due to the denial of medical care by "Nurse Horn," but Nurse Horn was permitted to remain on staff until she resigned in October 2018. Id. at 7-8. Bailey also claims that an inmate, Angela Yost, died from a bacterial infection after being denied medical care, even though Yost was obviously suffering from a serious medical condition that required treatment at a hospital. Id. at 9-13. Bailey states that Turn Key's contract with the Jail creates an incentive for Turn Key to deny medical care to inmates in order to increase its profit. Id. at 13-14. Bailey's complaint also describes incidents in other county jails across Oklahoma in which Turn Key allegedly failed to provide adequate medical care, and Bailey alleges that Turn Key has only one physician on staff to provide medical care for county jails in the entire state of Oklahoma. Id. at 14-17.

Bailey filed this case alleging claims against Floyd, Turn Key, Blalock, and Otoo under 42 U.S.C. § 1983. Bailey alleges that Blalock and Otoo were aware that she was suffering from a serious medical problem and needed medical treatment, but they "disregarded the known and obvious risks" to Bailey's health and safety. Id. at 18. Bailey has named Floyd as a defendant in his official capacity and her claim against Turn Key is based on a theory of municipal liability. Bailey alleges that Floyd and Turn Key knew of a substantial risk of harm to inmates caused by an

3

unconstitutional custom or policy of failing to provide adequate staffing at county jails and by minimizing medical care to increase Turn Key's profits. Id. at 17-19. The parties have filed a joint stipulation of dismissal (Dkt. # 45) as to Floyd, and plaintiff's claim against Floyd has been dismissed with prejudice.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual

4

averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

## III.

Blalock and Otoo have filed motions to dismiss on the grounds that plaintiff has failed to state a claim against them and, even if plaintiff has stated a claim, they argue that they are entitled to qualified immunity. Dkt. ## 10, 21. Turn Key argues that plaintiff has not adequately alleged the subjective component of a § 1983 deliberate indifference claim, and the allegations of the complaint fail to establish that any constitutional violation was the result of an official custom or policy. Dkt. # 12. Plaintiff responds that defendants wholly ignored her obvious need for medical care for approximately two days, and she has alleged sufficient facts to support an inference that defendants acted with deliberate indifference pursuant to an official policy or custom of understaffing prison medical facilities and minimizing care to increase Turn Key's profits.

Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The elements necessary to establish a § 1983 violation "will vary based on the constitutional provision at issue." Ashcroft, 556 U.S. at 676. Regardless of the constitutional provision at issue, however, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). In the context of § 1983 claims against multiple individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins

5

v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original).  "[T]he complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).[1] When the defendant is a municipal entity, the "under color of state law" element of a § 1983 claim requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff alleges that Turn Key violated her Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.  The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008).  To establish an Eighth Amendment violation, a plaintiff must show that a prison official acted with deliberate indifference.  "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that deliberate indifference has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Wilson, 501 U.S. at 298-99. The objective component of a deliberate indifference claim focuses on the severity of the harm

---

[1]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

suffered by the inmate.  Estate of Jensen by Jensen v. Clyde, 989 F.3d 848, 859 (10th Cir. 2021).

"To prevail on the subjective component, the prisoner must show that the defendant[] knew [she]

faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to

abate it."  Martinez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009).  However, "[t]he official's

knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or

knowledge of the particular manner in which injury might occur."  Tafoya , 516 F.3d at 916

(emphasis in original).  The same standards for a deliberate indifference claim apply to pretrial

detainees in state custody under the Due Process Clause of the Fourteenth Amendment.  Martinez,

563 F.3d at 1088.

**Blalock and Otoo**

> Blalock and Otoo argue that the allegations of plaintiff's complaint fail to state a deliberate

indifference claim against them and, even if plaintiff has stated a claim, they are entitled to qualified

immunity.  Dkt. ## 10, 21.  Plaintiff responds that she has alleged plausible claims against Blalock

and Otoo on the basis that they were aware of plaintiff's medical condition and failed to provide

treatment.  Dkt. # 26, 31.   Plaintiff also argues that private employees employed as medical

professionals in a prison medical clinic are not entitled to qualified immunity.  The Tenth Circuit has

determined that "neither 19th century common law nor modern policy considerations support

allowing private medical professionals who are employees of a contractor that provides healthcare

in jails or prisons to avail themselves of qualified immunity," and such private employees may not

raise a defense of qualified immunity to a § 1983 claim asserting that the medical professional was

deliberately indifferent to the plaintiff's need for medical treatment.  Tanner v. McMurray, 989 F.3d

860 (10th Cir. 2021).  Therefore, Blalock and Otoo are not entitled to qualified immunity, but the Court will consider whether plaintiff has stated a deliberate indifference claim against them.

The allegations against Blalock and Otoo are sparse.  The complaint alleges that plaintiff began to experience severe chest pain and an elevated heart rate, and her symptoms became worse over about two days.  Dkt. # 2, at 4.  Plaintiff claims that Blalock observed her "in extreme pain, knew that she had been repeatedly vomiting, sweating and having painful urination."  Id. at 4.  She also asserts that Blalock knew that plaintiff was suffering from chest pain, and "was so ill that she could not take her medications (including her beta blockers for blood pressure) or eat."  Id.  As to Otoo, the entirety of plaintiff's allegations against her are that "Otoo was aware of [plaintiff's] condition, but, in deliberate indifference to her serious medical needs, refused to send her to the hospital and did not come to the Jail to medically assess her."  Id.  The complaint contains other allegations about the denial of medical care, but those allegations are not tied in any way to the conduct of Blalock or Otoo.

The Court does not find that plaintiff has adequately alleged a § 1983 deliberate indifference claim against Blalock or Otoo, and plaintiff's claims against them should be dismissed.  Plaintiff's allegations considered collectively may state a claim that Turn Key was deliberately indifferent, but she has failed to provide adequate notice of the specific actions of Blalock or Otoo that would support a finding that they acted with deliberate indifference.   Plaintiff has alleges that Blalock observed that plaintiff had been vomiting, sweating, and suffering from chest pain, but there are no allegations that Blalock personally knew of the severity of plaintiff's condition or that Blalock intentionally disregarded a substantial risk of harm to plaintiff.  Plaintiff's allegations do not clearly state what Blalock knew about plaintiff's condition or when Blalock had this knowledge, and the

8

allegations of the complaint fail to state a basis to impose individual liability under § 1983 against Blalock. The allegations against Otoo are even more conclusory, and plaintiff simply alleges that Otoo was aware of plaintiff's condition and refused to send her to the hospital. These types of allegations are insufficient to establish the subjective component of a § 1983 deliberate indifference claim. See Strain v. Regalado, 977 F.3d 984, 995 (10th Cir. 2020) (dismissing § 1983 claim against medical provider when claim was based a single paragraph in the complaint that failed to allege facts concerning subjective component of claim). Plaintiff's complaint fails to give Blalock or Otoo sufficient notice of what they allegedly knew about plaintiff's medical condition or when they had this knowledge, and plaintiff has failed to state a deliberate indifference claim against either Blalock or Otoo.

**Turn Key**

Turn Key argues that plaintiff has failed to allege sufficient facts to show that a constitutional violation occurred and, even if she has adequately alleged a constitutional violation, she has failed to identify a specific policy or custom adopted by Turn Key that caused the constitutional violation. Dkt. # 12. Plaintiff responds that she has adequately alleged both components of a deliberate indifference claim as to Turn Key,[2] and her claim is based on allegations that Turn Key had a custom

---

[2]    The Court notes that it has found that plaintiff's allegations were insufficient to state a § 1983 claim against Otoo or Blalock, but this does not mean that plaintiff cannot state a claim against Turn Key. The Tenth Circuit has found that "even where 'the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights.'" Quintana v. Santa Fe County Bd. of Comm'rs, 973 F.3d 1022, 1033-34 (10th Cir. 2020) (quoting Garcia v. Salt Lake City, 768 F.2d 303, 310 (10th Cir. 1985)).

of inadequately staffing prison medical facilities and failing to train its staff to properly treat inmates with serious medical conditions.  Dkt. # 27.

Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability.  Monell, 436 U.S. at 691.  "To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."  Moss v. Kopp, 559 F.3d 1155, 1168 (10th Cir. 2009).   It is not enough for a plaintiff to allege that the actions of a governmental employee injured him.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002).  "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."  Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000).  One way for a plaintiff to prove a claim of municipal liability is to show that an express policy deprived the plaintiff of a constitutional right.  Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th Cir. 2009).  Another way to establish municipal liability is to show that an action taken by a final policymaker for the governmental entity violated or caused a violation of the plaintiff's constitutional rights.  Simmons v. Uintah Health Care Special Dist., 506 F.3d 1281, 1285 (10th Cir. 2007).

Plaintiff alleges that she was a pretrial detainee in the Jail and, on November 1, 2018, she began to experience severe chest pain and an elevated heart rate.  Dkt. # 2, at 4.  Plaintiff claims that she began vomiting and could not keep down food or medication, and she experienced "extreme

lower back pain and severe pain when urinating." Id. She "begged" to be taken to the hospital for two days, and she claims that prison guards and Turn Key's staff ignored her requests for medical treatment. Id. On November 3, 2018, the weekend nurse observed that plaintiff was in distress and noted plaintiff's symptoms, and the nurse found that plaintiff's blood pressure and heart rate were elevated. Id. at 4-5. However, the weekend nurse allegedly failed to provide any medical assistance and did not request that plaintiff be sent to the hospital. Id. at 5. Plaintiff claims that her condition deteriorated as the day went on and her fever increased to 103 degrees, and plaintiff was informed by detention staff that she would be transferred to a hospital if she agreed to be financially responsible for her own medical care. Id. Plaintiff agreed to the condition that she pay her own medical treatment and she was taken to a hospital for treatment. Id.

The Court finds that plaintiff has adequately alleged a deliberate indifference claim against Turn Key based on the denial of medical treatment. To satisfy the objective component of a deliberate indifference claim, a medical need is objectively serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Strain, 977 F.3d at 990. Plaintiff alleges that she was experiencing severe chest pain and had an elevated heart rate, and she was vomiting to the point that she could not keep down any food or medication. Plaintiff also claimed that she was suffering from serious lower back pain and severe pain when urinating, and her condition deteriorated over the course of approximately two days. Accepting plaintiff's allegations as true, plaintiff has adequately alleged that her medical condition was sufficiently serious that a lay person would have believed that plaintiff needed at a minimum to be assessed by a medical professional to determine if she needed medical treatment. See Estate of Jensen v. Clyde, 989 F.3d

848, 859 (10th Cir. 2021) (vomiting in connection with other symptoms indicating a need for medical treatment can be sufficient to meet the objective component of a deliberate indifference claim). Instead, plaintiff alleges that Turn Key wholly failed to provide any medical assessment or treatment until her fever increased to 103 degrees and, even at that point, she alleges that Turn Key agreed to transfer her to a hospital if she assumed financial responsibility for her own medical care. As to the subjective component of her claim, plaintiff has adequately alleged that Turn Key was aware that plaintiff had a serious medical condition that required at medical assessment and treatment, but Turn Key wholly failed to assess plaintiff's condition to determine what treatment was necessary to abate plaintiff's illness. This is not a situation where the plaintiff is alleging a misdiagnosis or is disputing whether the medical care provided was appropriate, but she is alleging that Turn Key failed to even perform a gatekeeping function to determine whether some medical care was necessary. The Tenth Court has explained that the subjective component of a deliberate indifference claim is satisfied when the defendant knew that the plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it," and this can be established by showing that the risk of harm to the plaintiff would have been obvious to a reasonable person. Id. (quoting Quintana v. Santa Fe Bd. of Comm'rs, 973 F.3d 1022, 1029 (10th Cir. 2021)). Plaintiff's allegations are sufficient to show that Turn Key was aware of her medical condition and disregarded the substantial risk of harm to plaintiff if no medical assessment was provided. Plaintiff's allegations are sufficient to establish the objective and subjective components of a deliberate indifference claim against Turn Key.

To state a deliberate indifference claim against Turn Key, plaintiff must also allege sufficient facts to support an inference that the constitutional violation was the result of an official policy or

custom of Turn Key.  Plaintiff alleges that Turn Key had a custom or policy of failing to provide access to trained medical professionals and of failing to keep a licensed physician at the Ottawa County Jail.  Dkt. # 2, at 6.  She claims that Turn Key provided access to a nurse practitioner via a "telemedicine" system, but even that was denied in this case.  Id.  Plaintiff cites numerous instances at other prison medical facilities operated by Turn Key in which medical care was inadequate or denied altogether, and she alleges that the poor medical care is the result of a custom or policy of Turn Key to cut costs and prioritize financial gain over the delivery of constitutionally adequate medical care.  Id. at 7-14.  At the pleading stage, the Court finds that plaintiff's allegations are sufficient to support an inference that plaintiff was denied medical care for serious condition due to an official policy or custom, and Turn Key's motion to dismiss (Dkt. # 12) should be denied.[3]

**IT IS THEREFORE ORDERED** that Defendant Josephine Otoo's Motion to Dismiss (Dkt. # 10) and Defendant Susan Blalock's Motion to Dismiss (Dkt. # 21) are **granted**.  **Otoo and Blalock are dismissed as defendant.**

**IT IS FURTHER ORDERED** that Defendant Turn Key Health Clinics, LLC's Motion to Dismiss (Dkt. # 12) is **denied**.

**DATED** this 17th day of September, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[3]   The Court notes that Turn Key raises a separate argument that plaintiff has failed to allege that Turn Key had final decision making authority at the Jail and that only the sheriff can be held liable for constitutional violations arising out of allegedly inadequate medical care provided at the Jail.  Dkt. # 12, at 17-18.  Plaintiff has specifically alleged that Turn Key provided medical care at the Jail pursuant to a contract with the sheriff, and "Turn Key was endowed by Ottawa County with powers or functions governmental in nature, such that Turn Key became an agency or instrumentality of the State . . . ."  These allegations are sufficient at this stage of the case to satisfy the requirement that Turn Key was an entity with final decision making authority concerning the provision of medical care at the Jail.